JUDGMENT

FILED: April 5, 2006

UNITED STATES COURT OF APPEALS

for the

Fourth Circuit

No. 05-1392
CA-04-2917-WDQ

FILED       ENTERED
LODGED      RECEIVED

APR   5 2006

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____ DEPUTY

KAREN WILSON

      Plaintiff - Appellant

v.

DRAPER & GOLDBERG, P.L.L.C.; L. DARREN GOLDBERG

      Defendants - Appellees

---

Appeal from the United States District Court for the
District of Maryland at Baltimore

---

In accordance with the written opinion of this Court filed this day, the Court reverses the judgment of the District Court. This case is remanded to the District Court for further proceedings consistent with the Court's opinion.

A certified copy of this judgment will be provided to the District Court upon issuance of the mandate. The judgment will take effect upon issuance of the mandate.

/s/ Patricia S. Connor
--------------------------
CLERK

PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

KAREN WILSON,
    *Plaintiff-Appellant,*

v.

DRAPER & GOLDBERG, P.L.L.C.; L. DARREN GOLDBERG,
    *Defendants-Appellees.*

No. 05-1392

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William D. Quarles, Jr., District Judge.
(CA-04-2917-WDQ)

Argued: December 1, 2005

Decided: April 5, 2006

Before WIDENER, WILKINSON, and TRAXLER, Circuit Judges.

---

Reversed and remanded by published opinion. Judge Traxler wrote the majority opinion, in which Judge Wilkinson joined. Judge Widener wrote a dissenting opinion.

---

### COUNSEL

**ARGUED:** Howard Robert Erwin, Jr., Baltimore, Maryland, for Appellant. Rita Ting-Hopper, DRAPER & GOLDBERG, P.L.L.C., Leesburg, Virginia, for Appellees. **ON BRIEF:** Scott R. Grigsby, DRAPER & GOLDBERG, P.L.L.C., Leesburg, Virginia, for Appellees.

## OPINION

TRAXLER, Circuit Judge:

Karen Wilson brought this action against the law firm of Draper & Goldberg, P.L.L.C., and one of its lawyers, L. Darren Goldberg (collectively, "Defendants"), for violation of the Fair Debt Collection Practices Act (the "Act") in connection with Defendants' initiation of foreclosure proceedings against her. Defendants filed a motion to dismiss for failure to state a claim, arguing that they were not covered by the Act. The district court treated the motion as one for summary judgment, and granted it in favor of Defendants. The district court concluded that, because Defendants were acting as substitute trustees foreclosing on a deed of trust, they could not be "debt collectors" under the Act and that any actions they took in connection with the foreclosure could not be challenged as violations of the Act. Wilson appeals, and we reverse and remand.

I.

We review a district court's grant of summary judgment de novo, viewing any facts and inferences drawn from them in the light most favorable to Wilson, the nonmoving party. *See Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996). The questions we address in this case are matters of statutory interpretation based on essentially undisputed facts. As a result, our review is plenary. *See United Energy Servs. v. Federal Mine Safety & Health Admin.*, 35 F.3d 971, 974 (4th Cir. 1994).

Chase Manhattan Mortgage Corporation ("Chase") retained Defendants to foreclose on Wilson's property due to her alleged failure to make mortgage payments. Defendants wrote Wilson on September 2, 2003, to announce that she was in default on her loan and that they were preparing foreclosure papers. Defendants' letter stated that "[f]ederal law requires us to advise you that this letter is written pursuant to the provisions of the Fair Debt Collection Practices Act . . . . [T]his letter is an attempt to collect a debt." J.A. 43. Defendants also sent Wilson a "VALIDATION OF DEBT NOTICE" pursuant to the Act, which gave specific information concerning "the amount of the debt," the "creditor to whom the debt is owed," and the procedure for

WILSON v. DRAPER & GOLDBERG                                     3

validating the debt. J.A. 44. The notice, however, expressly stated that Defendants were not "debt collectors" or acting in connection with the collection of a "debt." J.A. 44. Shortly after receiving the letter, Wilson wrote Defendants to dispute the debt and to request that they verify it with Chase.

On September 11, 2003, Defendants commenced foreclosure proceedings. One week later, Wilson's attorney advised Defendants that he represented Wilson and that Defendants should only communicate with him regarding the dispute. Nevertheless, on October 6, 2003, Defendants' "Sales Department" wrote directly to Wilson, not her attorney, to inform her that the foreclosure sale of her home would go forward on October 17, 2003. The letter again stated that it was an attempt to collect a debt. J.A. 45.

On October 9, 2003, Wilson's attorney requested a complete statement of Wilson's account indicating all interest, late charges and other charges, the interest rate, and all payments since the inception of the mortgage. In what Defendants claim was a response to Wilson's attorney, Defendants wrote directly to Wilson on October 15, 2003, providing the "amount to reinstate the above account," a balance of payments due, and instructions that any funds paid should be by cashiers check made payable to Chase and sent to Defendants. J.A. 47. As with previous letters, the letter stated "This notice is an attempt to collect a debt." J.A. 47. Prior to completing the foreclosure, Chase and Wilson resolved their dispute.

In 2004, Wilson commenced this action, alleging that Defendants violated the Act by failing to verify the debt, by continuing collection efforts after she had contested the debt, and by communicating directly with her when they knew she was represented by counsel. Defendants moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief could be granted, arguing that they were not acting in connection with a "debt" and that they were not "debt collectors" as those terms are defined by the Act.

The district court treated the motion as one for summary judgment because, in addition to the pleadings, it considered an affidavit and exhibit submitted by Defendants showing that the law firm was acting

as a substitute trustee on a deed of trust when it communicated with Wilson. The district court granted summary judgment in favor of Defendants, ruling that "[t]rustees foreclosing on a property pursuant to a deed of trust are not 'debt collectors' under the [Act]," J.A. 153, and that "actions taken by a trustee in foreclosing on a property pursuant to a deed of trust may not be challenged as [Act] violations," J.A. 154.

II.

Because we believe the district court misinterpreted the scope of the Act, and conclude that trustees, including attorneys, acting in connection with a foreclosure can be "debt collectors" under the Act, we reverse and remand.

A.

To be a "debt collector," there must first be a "debt." The Act defines a "debt" as:

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C.A. § 1692a(5) (West 1998).

We disagree with Defendants' argument that they were not acting in connection with a "debt." Defendants notified Wilson that she was in "default in [her] Deed of Trust Note payable to the Lender . . . [and] that the Lender [had] accelerated the *debt*." J.A. 43 (emphasis added). Defendants informed Wilson that her failure to make mortgage payments entitled Chase to immediate payment of the balance of her loan, as well as fees, penalties, and interest due. These amounts are all "debts" under the Act, because they were "obligation[s] . . . to pay money arising out of a transaction in which the . . . property . . . which [is] the subject of the transaction [is] primarily for personal, family, or household purposes." 15 U.S.C.A. § 1692a(5).

| WILSON v. DRAPER & GOLDBERG | 5 |
|---|---|

Defendants contend that foreclosure by a trustee under a deed of trust is not the enforcement of an obligation to pay money or a "debt," but is a termination of the debtor's equity of redemption relating to the debtor's property. In essence, Defendants argue that Wilson's "debt" ceased to be a "debt" once foreclosure proceedings began. Defendants rely on reported and unreported district court decisions, including *Hulse v. Ocwen Federal Bank, FSB*, 195 F. Supp.2d 1188 (D. Ore. 2002), which reasoned that "foreclosing on a deed of trust is an entirely different path [than collecting funds from a debtor]. Payment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the property." *Id.* at 1204; *see also Heinemann v. Jim Walter Homes, Inc.*, 47 F. Supp. 2d 716, 722 (N.D. W.Va. 1998) (stating that, to the extent the *pro se* complaint could be read to allege violation of the Act within the statute of limitations, the Act would not apply "[s]ince the trustees were not collecting on the debt at that time but merely foreclosing on the property pursuant to the deed of trust"), *aff'd*, 173 F.3d 850 (4th Cir. 1999) (unpublished table decision).

We disagree. Wilson's "debt" remained a "debt" even after foreclosure proceedings commenced. *See Piper v. Portnoff Law Assocs.*, 396 F.3d 227, 234 (3d Cir. 2005) ("The fact that the [Pennsylvania Municipal Claims and Tax Liens Act] provided a lien to secure the Pipers' debt does not change its character as a debt or turn PLA's communications to the Pipers into something other than an effort to collect that debt."). Furthermore, Defendants' actions surrounding the foreclosure proceeding were attempts to collect that debt. *See Romea v. Heiberger & Assocs.*, 163 F.3d 111, 116 (2d Cir. 1998) (concluding that an eviction notice required by statute could also be an attempt to collect a debt); *Shapiro & Meinhold v. Zartman*, 823 P.2d 120, 124 (Colo. 1992) ("[A] foreclosure is a method of collecting a debt by acquiring and selling secured property to satisfy a debt.").

Defendants' argument, if accepted, would create an enormous loophole in the Act immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt. We see no reason to make an exception to the Act when the debt collector uses foreclosure instead of other methods. *See Piper*, 396 F.3d at 236 ("We agree with the District Court that if a collector were able to avoid liability under

the [Act] simply by choosing to proceed *in rem* rather than *in personam*, it would undermine the purpose of the [Act].")(internal quotation marks omitted).

Furthermore, in this case, Defendants' October 15 letter to Wilson contained a specific request for money to "reinstate the above account" even after the foreclosure proceedings began. J.A. 47. The letter instructed Wilson to pay the amount, over half of which was for foreclosure fees, by cashiers check made payable to Chase and to send it to Defendants. By sending a letter seeking payment of an amount to "reinstate the above account" and directing Wilson to pay that amount by cashiers check, Defendants sought to collect an "obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C.A. § 1692a(5); *cf. Crossley v. Lieberman*, 868 F.2d 566, 570 (3d Cir. 1989) ("The letter unequivocally states that [the attorney] himself is collecting the money. Nowhere is it intimated that [the debtor] was to send money to [the lender] directly. Thus [the attorney] is a debt collector.").[1]

Thus, Defendants attempted to collect a "debt."

B.

We now turn to Defendants' argument that, even if they were acting in connection with a debt, they fall under an exception from the general definition of "debt collector." The Act generally defines a "debt collector" as

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly col-

---

[1] We cannot accept Defendants' argument that the letter was in response to a request by Wilson's lawyer. Defendants' letter was sent to Wilson and not her attorney, made no reference to her attorney's request, was not signed by anyone, and failed to provide much of the information her lawyer requested.

lects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C.A. § 1692a(6) (West 1998).

Defendants argue they fall under the exception to "debt collector" that covers "any person collecting or attempting to collect any debt . . . due another to the extent such activity . . . is incidental to a bona fide fiduciary obligation." 15 U.S.C.A. § 1692a(6)(F)(i) (West 1998). Defendants claim that, because they were acting as trustees foreclosing on a property pursuant to a deed of trust, they were fiduciaries benefitting from the exception of § 1692a(6)(F)(i).

We disagree. The fact that trustees foreclosing on a deed of trust are fiduciaries only partially answers the question. Rather, the critical inquiry is whether a trustee's actions are "incidental to a bona fide fiduciary obligation." *Id.* We conclude that a trustee's actions to foreclose on a property pursuant to a deed of trust are not "incidental" to its fiduciary obligation. Rather, they are central to it. Thus, to the extent Defendants used the foreclosure process to collect Wilson's alleged debt, they cannot benefit from the exemption contained in § 1692a(6)(F)(i). *Cf.* FTC Official Staff Commentary On the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50103 (Fed. Trade Comm'n Dec. 13, 1988) ("The exemption (i) for bona fide fiduciary obligations or escrow arrangements applies to entities such as trust departments of banks, and escrow companies. It does not include a party who is named as a debtor's trustee solely for the purpose of conducting a foreclosure sale (i.e., exercising a power of sale in the event of default on a loan).").

Nor is it relevant that Defendants were attorneys. Generally speaking, all lawyers are fiduciaries for their clients. As discussed above, however, the more important question is whether Defendants' actions were "incidental" to their fiduciary obligation. We conclude that they are not. Furthermore, it is well-established that lawyers can be "debt collectors" even if conducting litigation. *See Heintz v. Jenkins,* 514 U.S. 291, 299 (1995) ("[T]he Act applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation."). In fact, the Act as originally enacted exempted attorneys from its coverage, but Congress amended the Act

in 1986 "to provide that any attorney who collects debts on behalf of a client shall be subject to the provisions of [the] Act." Pub. L. No. 99-361, 100 Stat. 768 (codified at 15 U.S.C.A. 1692a); *see also Carroll v. Wolpoff & Abramson*, 961 F.2d 459, 461 (4th Cir. 1992) (discussing repeal of the attorney exemption). If the principal purpose of a lawyer's work is the collection of debts, he is a "debt collector" under the Act. *See Scott v. Jones*, 964 F.2d 314, 316-17 (4th Cir. 1992).

Thus, Defendants cannot benefit from § 1692a(6)(F)(i)'s exception to the definition of "debt collector" merely because they were trustees foreclosing on a property pursuant to a deed of trust.

C.

Defendants also allege that they cannot be held liable as charged in the complaint because Wilson has only alleged violations of portions of the Act that do not apply to them. They refer to a portion of the definition of "debt collector" that states, "[f]or the purpose of section § 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." 15 U.S.C.A. § 1692a(6). According to Defendants, because they are engaged in a business "the principal purpose of which is the enforcement of security interests," they can only be a "debt collector" under the one section expressly provided, 15 U.S.C.A. § 1692f(6). Because Wilson alleged no violation of § 1692f(6), Defendants argue that they cannot be liable under the Act.

We disagree. This provision applies to those whose *only* role in the debt collection process is the enforcement of a security interest. *See Jordan v. Kent Recovery Servs., Inc.*, 731 F. Supp. 652, 657 (D. Del. 1990)("It thus appears that Congress intended an enforcer of a security interest, such as a repossession agency, to fall outside the ambit of the FDCPA except for the provisions of § 1692f(6)."). In other words, this provision is not an exception to the definition of debt collector, it is an inclusion to the term debt collector. It serves to include as debt collectors, for the purposes of § 1692f(6), those who only enforce security interests. It does not exclude those who enforce security interests but who also fall under the general definition of

"debt collector." *See Piper*, 396 F.3d at 236 ("Section 1692a(6) thus recognizes that there are people who engage in the business of repossessing property, whose business does not primarily involve communicating with debtors in an effort to secure payment of debts.").

Thus, if Defendants meet the statutory definition of "debt collector," they can be covered by all sections of the Act, not just § 1692f(6), regardless of whether they also enforce security interests.

III.

The district court incorrectly concluded that Defendants could not be held liable under the Act. We hold that Defendants' foreclosure action was an attempt to collect a "debt," Defendants are not excluded from the definition of "debt collector" under 15 U.S.C.A. § 1692a(6)(F)(i) merely because they were acting as trustees foreclosing on a property pursuant to a deed of trust, and Defendants can still be "debt collectors" even if they were also enforcing a security interest. As a result, we reverse and remand.

On remand, Wilson can show that Defendants meet the definition of "debt collector" by demonstrating that they use "any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or . . . regularly collect[ ] or attempt[ ] to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C.A. § 1692a(6); *see also Heintz*, 514 U.S. at 294 ("[A] lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly 'attempts' to 'collect' those consumer debts."); *Crossley*, 868 F.2d at 569-70 (relying on volume of attorney's mortgage foreclosure actions to show he was a debt collector); *Shapiro*, 823 P.2d at 124 ("Since a foreclosure is a method of collecting a debt by acquiring and selling secured property to satisfy a debt, those who engage in such foreclosures are included within the definition of debt collectors if they otherwise fit the statutory definition.").

Our decision is not intended to bring every law firm engaging in foreclosure proceedings under the ambit of the Act. Nevertheless, it is well-established that the Act applies to lawyers "who 'regularly' engage in consumer-debt-collection activity, even when that activity


x

consists of litigation." *Heintz*, 514 U.S. at 299. Congress enacted the Act to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C.A. 1692(e) (West 1998); *see also Carroll*, 961 F.2d at 460. As such, lawyers who regularly engage in consumer-debt-collection activity should not be allowed to thwart this purpose merely because they proceed in the context of a foreclosure.[2]

Moreover, Defendants allegedly initiated over 2300 foreclosure actions in Maryland in 2003. There is no reason that a law firm handling this volume of foreclosures would be any more ill-equipped to comply with the Act than a more "traditional" debt collection agency. Defendants appear to have been aware that the Act could apply to their conduct, as their letters to Wilson contained clear references to the Act, including the notice "this is an attempt to collect a debt." *See* 15 U.S.C.A. § 1692e(11) (West 1998).

We reverse the district court's grant of summary judgment to Defendants and remand for proceedings consistent with this opinion.

*REVERSED AND REMANDED*

WIDENER, Circuit Judge, dissenting:

I respectfully dissent.

I begin with the full text of the fiduciary exception to the statutory definition of "debt collector":

> The term [debt collector] does not include—

---

[2] Of course, whether a law firm or not, a company's own efforts to collect overdue payments from its own delinquent clients would not ordinarily make it a "debt collector" under the Act, which specifically refers to those who collect debts "owed or due or asserted to be owed or due *another*." 15 U.S.C.A. § 1692a(6) (emphasis added); *see also Nielsen v. Dickerson*, 307 F.3d 623, 634 (7th Cir. 2002) ("[C]reditors who are attempting to collect their own debts generally are not considered debt collectors under the statute.").

WILSON v. DRAPER & GOLDBERG 11

>(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (I) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement.

15 U.S.C. 1692a(6). It is undisputed that defendants were trustees on the deed of trust. (JA 22, 41.) This means that they were fiduciaries as a matter of law. See *Bunn v. Kuta*, 674 A.2d 26, 32 (Md. Ct. Spec. App. 1996); *Whitlow v. Mountain Trust Bank*, 207 S.E.2d 837, 840 (Va. 1974).[1] And there is no reason to doubt their bona fides. But the majority offers a different reason to avoid the exception: defendants' actions were "central" to their fiduciary duties, not "incidental" as the statute provides. Slip op. 7.

Such a construction of the statute is not logical, I suggest. "Incidental" means "occurring merely by chance or without intention or calculation" or "being likely to ensue as a chance or minor consequence." *Merriam-Webster Collegiate Dictionary* 586 (10th ed. 2000). And "central" is defined as "of cardinal importance: essential, principal." *Id.* at 185. Even assuming that a foreclosure is "central" to the defendants' duties, the majority conclusion that a central task incident to the duty is not exempted does not follow from the premise. If the exception covers the minor unintended acts relating to incidental fiduciary duties, it must cover the principal acts as well. Otherwise the exception would accomplish very little, for the majority definition excludes "other bona fide fiduciaries" which are included in the Senate Report, infra.[2]

The legislative history of the fiduciary exception further erodes the majority reasoning. It shows that the original House version of the bill did not include the exception for fiduciaries. See H.R. Rep. No. 95-

---

[1] The offices of Draper & Goldberg are in Virginia, the deed of trust in question is in Maryland.

[2] The appellate cases mentioning the exception do not bear upon this case. See *Pelfrey v. Educ. Credit Mgmt. Corp.*, 208 F.3d 945 (11th Cir. 2000) (per curiam), aff'g 71 F. Supp. 2d 1161 (N.D. Ala. 1999) (applying exception to assignee of guarantor of defaulted student loan); *Buckman v. Am. Bankers Ins. Co. of Fla.*, 115 F.3d 892, 895 (11th Cir. 1997) (not considering exception).

131, at 4, 11, 17-18 (Mar. 29, 1977). Only later did the Senate add it. See 123 Cong. Rec. at 27384 (Aug. 5, 1977) (text of Senate version); see also *id.* at 28109-13 (House adopting Senate amendments). So including the exception within the statute was a deliberate act. Moreover, the Senate committee report explained the purpose of the amendment:

> [T]he committee does not intend the definition [of debt collector] to cover the activities of trust departments, escrow companies, *or other bona fide fiduciaries.* (Italics added.)

S. Rep. No. 95-382, at 3, reprinted at 1977 U.S.C.C.A.N. 1695, 1698; see also *id.* at 1701. This explanation is on point and unambiguous. We should not ignore such unambiguous text, especially when it is augmented by the balance of the legislative history referred to.

Yet the FTC Staff Commentary, which is the only authority particular to the fiduciary exception cited by the majority, does just that. The Commentary provides that the exception does not apply to trustees named "solely for the purpose of conducting a foreclosure sale."[3] This innovation conflicts not only with the statutory text but also with the Senate report set forth above. We have declined to follow the Commentary in past FDCPA cases upon discerning such a conflict, see *Scott v. Jones,* 964 F.2d 314, 317 (4th Cir. 1992), and we should do so again here. Our obligation not to follow the FTC Commentary is reinforced by the Commentary's self-doubt which appears at the beginning of the Commentary. Reciting that the Supreme Court has held that the Commentary was not binding and not entitled to deference when it conflicted with the plain language of the statute, the Commentary continued:

> "[I]t is not clear whether the FTC has the authority to issue the Commentary [and] courts have little difficulty disregarding Commentary positions [viewed] as incorrect." JA 129, see *Heintz v. Jenkins,* 514 U.S. 291 (1995).

---

[3]Limiting by their appointment the duty of the trustees to be "*solely* for the purpose of conducting a foreclosure sale" is not shown in the record in this case. (Italics added.)

WILSON v. DRAPER & GOLDBERG                    13

Tellingly, even this self-abnegation *over*states the FTC's authority under the Act which the statute itself limits:

> Neither the [Federal Trade] Commission nor any other agency referred to in subsection (b) of this section may promulgate trade regulation rules or other regulations with respect to the collection of debts by debt collectors as defined in this subchapter.

15 U.S.C. § 1692l(d). This provision, like the fiduciary exception, is unambiguous. So is its legislative history:

> "I want to make a special point: No Federal agency will write regulations for this legislation." 123 Cong. Rec. 10241 (Apr. 4, 1977) (statement of Rep. Annunzio).

And § 1692l(d) too, was itself an amendment. See *id.* at 10255 (statement of Rep. Rousselot noting amendment); see also the Senate Report, 1977 U.S.C.C.A.N. at 1703, which describes making of the FTC regulations as "prohibited." For various reasons given by courts which have cited the FTC Commentary, they decline to give it *Chevron* deference,[4] instead analyzing it as contrary to the statute or in terms of power to persuade, or lack thereof. See, e.g., *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 493 n.1 (5th Cir. 2004); *Scott*, supra, 964 F.2d at 317. But the majority relies upon the FTC Commentary. This, despite the fact that the single sentence deemed dispositive does not explain, or pretend to explain, the legislative history including the Senate Report, rather it contradicts the statutory text and the Senate report as if Congress were not the principal instrument of public policy.

> " . . . it is equally—and emphatically—the exclusive province of the Congress not only to formulate legislative policies and mandate programs and projects, but also to establish their relative priority for the Nation." *Tenn. Valley Authority v. Hill*, 437 U.S. 153, 194 (1978).

---

[4]*Chevron USA v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

Even setting aside our duty to look first to Congress, I can think of no rationale for the agency's position other than a Shakespearean distrust of lawyers. And the Commentary's other policy flaws are plain: for instance, it fails to recognize that the duty of a lawyer-trustee under such a deed of trust runs to the property and, as well, to the borrower and the lender. See, e.g., *White v. Simand*, 831 A.2d 517, 524-25 (Md. Ct. App. 2003); *Powell v. Adams*, 18 S.E.2d 261, 262-63 (Va. 1942). This difference between a lawyer-trustee and a lawyer who is merely a debt collector, although patent, is not explained.[5]

Accordingly, I would affirm.

---

[5] The trustee, for example, must publicly account for the distribution of the proceeds of the sale. See generally *In re: Trustee's Sale of the Property of Willie Brown, et al.*, 67 Va. Cir. 204 (Circuit Court of the City of Norfolk, 2005).